UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Adam H. Nagle

     v.                              Civil No. 08-cv-413-JL
                                         Opinion No. 2009 DNH 195

Warden, New Hampshire State
Prison, et al.


**MEMORANDUM ORDER**

This case asks whether prison guards used excessive force in responding to an inmate's seizure-like episodes.  Plaintiff Adam Nagle, formerly an inmate at the New Hampshire State Prison, has filed this civil rights suit against the prison warden and various guards under 42 U.S.C. § 1983.  He alleges that the guards used excessive force in violation of his Eighth Amendment rights and that, when he later complained about it, one of the guards retaliated against him in violation of his First Amendment rights.  He also alleges intentional infliction of emotional distress under state law.  This court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

Earlier in the case, this court denied Nagle's request for preliminary injunctive relief,[1] agreeing with Judge Muirhead that Nagle was unlikely to succeed on the merits because "[n]othing in the record supports his claim that he suffered from excessive

_____

[1] Document no. 18.

force" and his retaliation claim was "similarly baseless."[2]  The defendants have now moved for summary judgment, see Fed. R. Civ. P. 56, relying primarily on the testimony at the preliminary injunction hearing.  Nagle, who is proceeding pro se, has not objected.

After reviewing the summary judgment record,[3] this court grants the motion.  All witnesses on record have indicated that the guards responded in good faith to Nagle's seizure-like episodes and used only as much force as necessary under the circumstances to prevent Nagle from harming himself or others. Nagle, who admits to being unconscious during the episodes, has presented no evidence to refute those accounts.  His excessive force and emotional distress claims therefore fail on the merits. His retaliation claim also fails because nothing in the record supports an inference of retaliatory intent.

I. **Applicable legal standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits

---

[2]Document no. 16, at 18, 20 (Muirhead, M.J.).

[3]While the court normally hears oral argument on all dispositive motions, none was held in this case because Nagle was paroled from the prison but did not provide the court with contact information as required by Local Rule 83.6(e).  Thus, the court was unable to provide him notice for a hearing and did not hold one.

show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if it may reasonably be resolved in either party's favor at trial, and "material" if it has the capacity to sway the outcome under applicable law.  <u>Vineberg v. Bissonnette</u>, 548 F.3d 50, 56 (1st Cir. 2008) (quotations omitted).  In making this determination, the "court must scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor."  <u>Mulvihill v. Top-Flite Golf Co.</u>, 335 F.3d 15, 19 (1st Cir. 2003).

Where, as here, the non-moving party files no response to the summary judgment motion, "[a]ll properly supported material facts in the moving party's factual statement shall be deemed admitted," since they were not "properly opposed."  L.R. 7.2(b)(2); <u>see also</u> <u>De Jesus v. LTT Card Svcs., Inc.</u>, 474 F.3d 16, 20 (1st Cir. 2007).  Summary judgment does not, however, "automatically follow" from the lack of a response.  <u>Stonkus v. City of Brockton Sch. Dep't</u>, 322 F.3d 97, 102 (1st Cir. 2003). The court still must evaluate whether the moving party's submission meets the summary judgment standard.  <u>See</u> Fed. R. Civ. P. 56(e) ("If the adverse party does not ... respond, summary judgment, <u>if appropriate</u>, shall be entered against the adverse party.") (emphasis added).

3

Consistent with these rules, the following background summary is based on the factual statement in the defendants' motion, which is supported by testimony from the preliminary injunction hearing, Nagle's medical records, and prison disciplinary records.[4]

## II.  **Background**

Nagle has a history of panic attacks and an anxiety disorder that can cause seizure-like episodes.[5]  During these episodes, he claims to lose consciousness and control over his body.  He pulls at his clothing and, when touched, reacts in a violent manner. Upon regaining consciousness, he sometimes finds that he has sustained injuries (including head injuries) or asks whether he has injured anyone else.

Nagle suffered one of these seizure-like episodes in June 2008, two months after becoming an inmate at the New Hampshire State Prison.  His cellmate flagged the prison guards, who found Nagle lying on the floor of his cell and called for a nurse.

---

[4]The defendants and their counsel omitted from their motion a number of significant facts, which needless to say did not help the court in its effort to evaluate Nagle's pro se claims.  Where appropriate, the court has filled in factual gaps by using the transcript from the preliminary injunction hearing.

[5]It is unclear whether Nagle suffers actual seizures, because the brain activity typically associated with a seizure has not been detected, and his behavior during the episodes differs from that seen in a typical seizure.

They also placed blankets under his head to protect him from injury.  Nagle appeared to be drifting in and out of consciousness.  Within minutes, he regained enough control to move from the floor to his bed, where one of the guards, Sergeant Robert Parent, sat beside him.

The nurse arrived and began to evaluate Nagle.  When she attempted to take his pulse, he became combative, flailing his arms and almost hitting her.  Another guard, Corporal Randy Inman, stepped in front of the nurse, and Nagle hit him in the stomach.  Corporal Inman then ordered that Nagle be taken down to the floor for safety reasons.  Sergeant Parent, who had been attempting unsuccessfully to secure Nagle's wrists, guided him down to the floor in a controlled manner, facedown at first and then turning him over onto his back.  The other guards helped hold Nagle down on a mattress that they had moved to the floor.  Leaning over Nagle, Sergeant Parent tapped him on the chest and said "stay with us."

After a brief reprieve, Nagle started to seize again.  The guards stopped holding him down, stood back, and let the episode run its course.  Upon regaining consciousness, Nagle asked what had happened and whether he was in trouble.  The guards told him about his combative behavior, but assured him that he would not be punished for it.  Nagle received medical treatment from the

nurse and then fell asleep.  Three days later, he received additional treatment for a bump on his forehead.

Nagle suffered another seizure-like episode in August 2008. This one happened away from his cell, and much less is known about it.  Nagle regained consciousness at the bottom of a stairway, where prison staff found him lying facedown, and he could not recall what had happened or whether he had fallen down the stairs.  Nagle was seen by a prison doctor for another bump on his forehead and then taken to a nearby hospital for treatment.

In September 2008, Nagle wrote a confidential letter to the warden complaining about the guards' use of force during those seizure-like episodes.  Believing that prison staff intercepted and opened the letter before it reached the warden, Nagle asked one of the guards, Sergeant Christian Pelletier, to start an investigation.  Sergeant Pelletier refused to do so because he lacked authority and because Nagle had not followed the proper grievance procedure.[6]  He advised Nagle to start that process by filing an inmate request slip with the appropriate staff member, which Nagle did.

---

[6] See Ellison v. N.H. Dep't of Corr., 2009 DNH 017, 7-9 (describing the prison's three-level grievance procedure as set forth in Policy and Procedure Directive (PPD) 1.16).

In the request slip, Nagle alleged that Sergeant Pelletier said he would never investigate a fellow officer, even if he witnessed misconduct with his own eyes.  This allegation prompted Sergeant Pelletier to initiate a disciplinary proceeding against Nagle for lying.  Following an investigation by Sergeant Parent, Nagle was found guilty and some of his prison privileges were temporarily suspended.[7]

Later, while conducting a routine safety search in Nagle's cell, Sergeant Pelletier accidentally tore the corners of a photograph and a piece of artwork taped to Nagle's wall.  He apologized to Nagle shortly afterward and suggested that, in the future, Nagle should use looped tape on the back of his pictures to prevent them from being torn during cell searches. Notwithstanding this apology, Nagle filed an inmate request slip in November 2008 complaining about the search.  Lieutenant Michael Schofield, believing that Nagle's complaint mischaracterized the incident, initiated another disciplinary proceeding against him for lying.  Charges were dropped after Sergeant Pelletier acknowledged tearing the pictures.  Nagle received no discipline.

---

[7]See PPD 5.25, Rule 56.B (prohibiting inmates from "lying, or providing false or misleading information to a staff member or to persons of authority"), issued pursuant to N.H. Rev. Stat. § 622:14.

## III.  <u>Analysis</u>

The defendants have moved for summary judgment on all of Nagle's claims:  (A) his Eighth Amendment claim alleging that the prison guards used excessive force in responding to his seizure-like episodes; (B) his First Amendment claim alleging that one of the guards retaliated against him for complaining about the use of force; and (C) his state-law claim of intentional infliction of emotional distress.  As explained below, the summary judgment record shows that the guards used only as much force as necessary under the circumstances to prevent Nagle from harming himself or others.  The record also shows that Nagle suffered no retaliation for his combative behavior during the episodes or for later complaining about the guards' response.  Because Nagle has not presented any evidence from which a reasonable fact-finder could find in his favor, this court grants summary judgment to the defendants on all claims.


## A.  *Excessive force claim*

Nagle claims that the defendants violated his Eighth Amendment rights by using excessive force in responding to his seizure-like episodes.  <u>See</u> U.S. Const. amend. VIII (prohibiting the infliction of "cruel and unusual punishments").  To prevail on this claim, Nagle must show an "unnecessary and wanton

8

infliction of pain." <u>Skinner v. Cunningham</u>, 430 F.3d 483, 488 (1st Cir. 2005) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320 (1986)).  "The critical question in such a case is whether the force was applied 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good-faith effort to maintain or restore discipline.'" <u>Id.</u> (quoting <u>Whitley</u>, 475 U.S. at 320-21, and <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)).  In answering this question, "the subjective motivations of the individual officers are of central importance." <u>Graham v. Connor</u>, 490 U.S. 386, 398 (1989).  The court also may consider various objective factors, including whether the defendants needed to apply force, whether the force they applied was proportional to that need, whether they made any efforts to temper the severity of the force, and the extent of any injury they caused.  <u>See</u> <u>Hudson</u>, 503 U.S. at 7; <u>Whitley</u>, 475 U.S. at 321.

Here, the summary judgment record shows that the defendants made a good-faith effort to respond to Nagle's seizure-like episodes.  All witnesses on record have indicated that Nagle behaved in a combative manner during the June 2008 episode, nearly hitting a nurse and then actually hitting a guard, and that the guards used only as much force as necessary to prevent Nagle from harming himself or others.  According to the nurse, the guards appeared genuinely concerned for Nagle's well-being

9

and took extraordinary care in restraining him.  The guards confirmed that they were indeed concerned and trying to help Nagle.  They tempered the severity of their force by putting blankets and then a mattress under him.  As for the August 2008 episode, there is no evidence that the defendants witnessed it or used any force at all.

Although Nagle strongly suspects that the guards used excessive force on both occasions, he has admitted that he became unconscious during the episodes and cannot personally recall what happened.  "For purposes of summary judgment, an allegation ... must be based on personal knowledge and show affirmatively that the [witness] is competent to testify to the matters stated therein."  Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 5 (1st Cir. 2005); see also Fed. R. Civ. P. 56(e)(1) (stating that summary judgment affidavits "must be made on personal knowledge").  The personal knowledge requirement prevents a witness from testifying to what he "could not have actually perceived or observed."  United States v. Rodriguez, 162 F.3d 135, 144 (1st Cir. 1998).  Here, Nagle did not actually perceive or observe the use of force.  He is merely speculating as to what happened while he was unconscious.[8]  Our court of appeals has

---

[8]To the extent that Nagle's speculation may be based on hearsay from his cellmate or other inmates, which is unclear from the record, "[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment."  Davila v. Corporacion de P.R. Para La Difusion Publica, 498 F.3d 9, 17 (1st Cir. 2007);

made clear that summary judgment cannot be defeated by "rank speculation." Enica v. Principi, 544 F.3d 328, 336 (1st Cir. 2008).

The only evidence that Nagle has provided to support his speculation is that he sustained injuries in both episodes, including bumps on his forehead. It is true that the severity of injury is one of various factors that--while not required--may be considered in the excessive force analysis. See Hudson, 503 U.S. at 7. Nagle has admitted, however, that he has a history of violent behavior during his episodes and sometimes sustains injuries, including head injuries, from contact with the floor or walls before help arrives.[9] Thus, the mere fact of such an injury, standing alone, is not enough to create a genuine, trialworthy issue as to whether the defendants used excessive force, particularly when all witness testimony is to the contrary.[10] See Vineberg, 548 F.3d at 56 (explaining that an

---

see also Fed. R. Civ. P. 56(e)(1) (stating that summary judgment affidavits must "set out facts that would be admissible in evidence"). Moreover, his cellmate testified that he was removed from the cell when the guards arrived and did not personally witness the use of force either.

[9]It is worth noting, in this regard, that Nagle was already lying on the floor when the guards arrived at his cell during the June 2008 episode and was found lying facedown at the bottom of a stairway after the August 2008 episode.

[10]This analysis might have been different if Nagle's injuries had been more severe and arguably inconsistent with the witness accounts. See, e.g., Rivas v. City of Passaic, 365 F.3d 181 (3d Cir. 2004) (seizure response resulting in death); Lolli

issue is "genuine" if it may reasonably be resolved in either party's favor at trial).

Nagle seems to take the extreme position that the defendants' use of force was per se excessive because, under proper medical procedure, they should have stood back and allowed the episode to run its course without touching him at all.  But the record shows that the guards did, in fact, stand back and allow the episode to run its course after moving Nagle to the floor and placing him on a mattress for safety.  This limited "use of force could plausibly have been thought necessary." Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321); see also Wysong v. City of Heath, 260 Fed. Appx. 848, 858 (6th Cir. 2008) (unpublished) (rejecting a similar argument in a seizure case).  Moreover, the excessive force standard[11] requires that

---

v. County of Orange, 351 F.3d 410 (9th Cir. 2003) (seizure response resulting in broken ribs); Frazell v. Flanigan, 102 F.3d 877 (7th Cir. 1996) (seizure response resulting in possible fractured skull and severe cuts), abrogation on other grounds recognized by McNair v. Coffey, 279 F.3d 463 (7th Cir. 2002).

[11]A slightly different standard applies to Eighth Amendment claims for inadequate medical care, which require "deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Hudson, 503 U.S. at 9 (distinguishing from excessive force claims).  But Nagle waived any such claim by failing to object when Judge Muirhead, applying Local Rule 4.3(d)(2), expressly formulated his pro se claim as one for excessive force.  See document no. 5 (Muirhead, M.J.). In any event, Nagle's claim would fail under the medical care standard as well, since the record shows that the defendants did not act with deliberate indifference and that Nagle received adequate medical care for the injuries he sustained.

the force be not only unnecessary, but also wanton--i.e.,
"tantamount to a knowing willingness that [unnecessary harm]
occur." Id.  All witnesses on record testified that they were
genuinely concerned for Nagle and trying to help him, not hurt
him.  His unusual seizure-like behavior was unlike anything they
had ever seen and demanded an emergency response.  Even if, in
hindsight or after further medical consultation, they might have
responded differently, nothing in the record suggests that the
defendants acted wantonly or in willful defiance of medical
standards.

    The Supreme Court has made clear that "[u]nless it appears
that the evidence, viewed in the light most favorable to the
plaintiff, will support a reliable inference of wantonness in the
infliction of pain under the standard we have described, the case
should not go to the jury." Whitley, 475 U.S. at 322.  Since the
evidence here negates, rather than supports, such an inference,
this court grants summary judgment to the defendants on Nagle's
excessive force claim.  Cf. Everson v. Leis, 556 F.3d 484, 498
(6th Cir. 2009) (granting summary judgment on excessive force
claim where plaintiff "had no recollection" of his seizure and
"there is nothing to rebut the affidavits submitted by [the
officers] showing that [plaintiff] posed an immediate threat to
the safety of himself and emergency personnel"); Wysong, 260 Fed.
Appx. at 858 (concluding, in similar circumstances and for

13

similar reasons, that plaintiff "cannot beat something with nothing").[12]

## B. *Retaliation claim*

Nagle also claims that one of the defendants--either Sergeant Parent or Sergeant Pelletier[13]--retaliated against him for complaining about the guards' use of force, thereby violating his First Amendment right "to petition the Government for a redress of grievances." U.S. Const. amend. I.   This claim focuses, in particular, on two inmate request slips that Nagle filed:   one complaining about the use of force, and the other complaining about a subsequent cell search in which Sergeant Pelletier damaged two pictures taped to Nagle's wall.   Both complaints resulted in disciplinary proceedings against Nagle for allegedly lying about what Sergeant Pelletier said or did.   In

---

[12]These were arrest cases, not prison cases, and thus involved the Fourth Amendment standard for excessive force, not the Eighth Amendment standard.   The Fourth Amendment standard can be more favorable to plaintiffs because it focuses on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."   Graham, 490 U.S. at 397.

[13]Nagle initially brought his retaliation claim against most of the defendants, challenging a wide range of conduct.   At the preliminary injunction hearing, however, he voluntarily dismissed it as to all but one defendant, Sergeant Parent.   Judge Muirhead noted in his subsequent order that, based on the testimony, Nagle appeared to mean Sergeant Pelletier.   Document no. 16, at 9 n.6 (Muirhead, M.J.).   In an abundance of caution, this court analyzes the claim as to both defendants.

the first proceeding, investigated by Sergeant Parent, Nagle was found guilty of lying and temporarily lost some prison privileges.  In the second proceeding, charges were dropped after Sergeant Pelletier acknowledged that he accidentally tore the pictures.[14]

To prevail on this retaliation claim, Nagle must show that (1) his complaints were protected activity under the First Amendment; (2) the defendants took adverse action against him, and (3) there was a causal connection between the protected activity and the adverse action.  See, e.g., Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008); Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Thaddeus-X v. Blatter, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc); Cossette v. Poulin, 2008 DNH 162, 7-8.  This court will assume, without deciding, that Nagle's complaints were protected activity under the First Amendment, thus satisfying the first element of his claim.  See, e.g., Fogle v. Pierson, 435 F.3d 1252, 1264 (10th Cir. 2006) ("Several circuits have held

---

[14]These are Nagle's most significant allegations against Sergeants Parent and Pelletier.  He also alleges that they refused to make free photocopies for him of their incident reports.  But that was consistent with general prison policy applicable to all inmates, see PPD 7.42, and also consistent with the First Amendment.  See, e.g., Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991) ("numerous courts have rejected any constitutional right to free and unlimited photocopying").  To the extent that Nagle makes other conclusory allegations of retaliation, "summary judgment cannot be defeated by relying on ... conclusory allegations."  Enica, 544 F.3d at 336.

that a prisoner's first amendment right to petition the government for a redress of grievances encompasses the filing of inmate administrative appeals."). His claim nevertheless fails to satisfy the other two elements.

As to the second element, Nagle must show that the defendants took adverse actions against him that "would chill or silence a person of ordinary firmness from future First Amendment activities." Morris v. Powell, 449 F.3d 682, 685 (5th Cir. 2006) (quoting Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc)). "[C]ertain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations." Thaddeus-X, 175 F.3d at 398. Applying this standard, our court of appeals recently held that no "reasonable fact-finder could conclude that inmates of 'ordinary firmness' would be deterred from continuing to exercise their constitutional rights merely because of the filing of a disciplinary charge" where that charge is ultimately dismissed and the prisoner receives no discipline. Starr v. Dube, 334 Fed. Appx. 341, 343 (1st Cir. 2009) (unpublished). That is exactly what happened to Nagle after his complaint about the torn pictures: disciplinary charges were filed against him for allegedly lying, but then were dismissed after Sergeant Pelletier acknowledged tearing the pictures. As in Starr, this sequence of events would not deter an inmate of ordinary firmness from

exercising his First Amendment rights and thus is not enough to support a retaliation claim.[15]

Nagle might be able to show that the other disciplinary proceeding at issue, in which he was found guilty of lying and temporarily lost some of his prison privileges, satisfies the second element of his retaliation claim.  The record is unclear as to whether the punishment rose above a de minimis level.  Even if it did, however, the third element of Nagle's claim--causation --would still stand in his way.  Our court of appeals has said that inmates "face a substantial burden" to show that retaliation is "the actual motivating factor" for the adverse action, meaning that "but for" the retaliatory motive it would not have happened. McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see also Starr, 334 Fed. Appx. at 342; Jackson v. Fair, 846 F.2d 811, 920 (1st Cir. 1988).

---

[15]Moreover, the notion that Sergeant Pelletier retaliated against Nagle, when he is the one who acknowledged tearing the pictures and thus prevented Nagle from being disciplined, defies logic.  If Nagle means to suggest that Sergeant Pelletier retaliated against him by damaging the pictures in the first place, that claim is also clearly without merit.  Sergeant Pelletier testified--and Nagle has not provided any reason to doubt--that he tore the pictures by accident and only at the corners.  He apologized to Nagle shortly after it happened.  The incident was not retaliatory and, in any event, was de minimis. Indeed, it did not deter Nagle from filing his subsequent complaint.

No reasonable fact-finder could conclude, on this record, that Sergeants Parent and Pelletier disciplined Nagle in retaliation for his complaint about excessive force.  Indeed, Sergeant Pelletier is the one who advised Nagle to file an inmate request slip in the first place.  And while one might view his advice as sarcastic, insincere, or dismissive, the evidence in the summary judgment record is that Sergeant Pelletier initiated the disciplinary proceeding not because Nagle followed his advice and filed the complaint, but rather because Nagle accused him of saying that he would never investigate a fellow officer, even if he witnessed misconduct with his own eyes (which he denied).  Any guard would have defended himself against such a scandalous accusation and attempted to clear his name, irrespective of the nature of the underlying complaint.  Nagle has not offered any reason to believe that "but for" a retaliatory motive the disciplinary proceeding would not have happened.  <u>Cf. Hasan v. Dep't of Labor</u>, 400 F.3d 1001, 1005 (7th Cir. 2005) (Posner, C.J.) (affirming summary judgment on retaliation claim where "the defendants presented uncontradicted evidence that they punished [the inmate] not because he tried to exercise free speech but because his accusation was a lie").

This court recognizes that "a retaliatory state of mind typically is not susceptible to proof by direct evidence," <u>Ferranti v. Moran</u>, 618 F.2d 888, 892 (1st Cir. 1980) (citing

18

McDonald, 610 F.2d at 18), and that even if a defendant denies having a retaliatory motive, circumstantial evidence can be enough to establish liability if it supports a reasonable inference of retaliation.  See Beauchamp v. Murphy, 37 F.3d 700, 711 (1st Cir. 1994); Ferranti, 618 F.2d at 892.  But the circumstances here cannot support such an inference.  Nagle admits that he never received any punishment for his combative behavior during his seizure-like episodes.  The defendants treated them as medical emergencies, not as hostile encounters. Months later, when Nagle asked for help with an investigation, Sergeant Pelletier advised him to file a formal complaint.  And when Sergeant Pelletier later damaged pictures on Nagle's wall, he apologized and admitted it to prison authorities.  This is not the sort of treatment that even remotely suggests retaliation. This court therefore grants summary judgment on Nagle's retaliation claim.  See, e.g., Layne v. Vinzant, 657 F.2d 468, 476 (1st Cir. 1981) (concluding that retaliation claim should not have gone to jury where inmate's allegations were based on "no more than speculation and conjecture," and "any possible inference[s] to be derived from the circumstances ... were fully met by the evidence of a [legitimate] reason").

19

C.  *Emotional distress claim*

Finally, Nagle claims that the defendants, through the use
of excessive force, committed intentional infliction of emotional
distress under New Hampshire law.[16]  The bar for such a claim is
"very high."  <u>Moss v. Camp Pemigewassett, Inc.</u>, 312 F.3d 503, 511
(1st Cir. 2002).  Nagle must show "extreme and outrageous
conduct" by the defendants that "intentionally or recklessly
cause[d] severe emotional distress."  <u>Mikell v. Sch. Admin. Unit
No. 33</u>, 158 N.H. 723, 728 (2009).  The conduct must go "beyond
all possible bounds of decency."  <u>Id.</u> at 729.

As explained above, the summary judgment record shows that
the defendants did not use excessive force in responding to
Nagle's seizure-like episodes, thus refuting the central premise
of his emotional distress claim.  By all accounts, the defendants
responded with decency and genuine concern for Nagle's safety.
The court cannot conclude, on this record, that the defendants

---

[16]In most cases, the dismissal of all federal claims before
trial "will point toward declining to exercise [supplemental]
jurisdiction over the remaining state-law claims."  <u>Carnegie-
Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).  But there
is no "mandatory rule" requiring dismissal; courts must "consider
and weigh in each case, and at every stage of the litigation, the
values of judicial economy, convenience, fairness, and comity in
order to decide whether to exercise jurisdiction."  <u>Id.</u>  In this
case, the close proximity to trial and the heavy overlap between
Nagle's federal and state-law claims both point in favor of
exercising jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Nowak v. Ironworkers Local 6
Pension Fund</u>, 81 F.3d 1182, 1192 (2d Cir. 1996).  This court
therefore resolves his state-law claim as well.

even approached the high bar of extreme and outrageous conduct under New Hampshire law.  Summary judgment is therefore granted on this claim as well.

## IV.  **Conclusion**

For the reasons stated above, the defendants' motion for summary judgment[17] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:     December 30, 2009

cc:        Adam H. Nagle
           Laura E. B. Lombardi, Esq.

_____

[17]Document no. 28.